✎AO 241
(Rev. 10/07)

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: Southern District of New York | |
|---|---|---|
| Name (under which you were convicted): <br><br>Wilfred Matthews | | Docket or Case No.: <br>26 Civ. 686 |
| Place of Confinement : <br>Elmira Correctional Facility | Prisoner No.: <br><br>13A2700 | |
| Petitioner (include the name under which you were convicted) <br><br> Wilfred Matthews | Respondent (authorized person having custody of petitioner) <br>v. <br> Kevin McCarthy, Superintendent of Elmira <br> Correctional Facility | |
| The Attorney General of the State of | | |

**PETITION**

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    New York County Supreme Court, New York, New York


    (b) Criminal docket or case number (if you know):  3349/2012

2.  (a) Date of the judgment of conviction (if you know):  5/7/2013

    (b) Date of sentencing:  6/3/2013

3.  Length of sentence:  Life

4.  In this case, were you convicted on more than one count or of more than one crime?  ☑ Yes  ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:

    murder in the first degree (NY PL § 125.27(1)(a)(vii)); murder in the second degree (NY PL § 125.25(1));
    murder in the second degree (NY PL § 125.25(3))




6.  (a) What was your plea? (Check one)

    ☑ (1)  Not guilty     ☐ (3)  Nolo contendere (no contest)

    ☐ (2)  Guilty     ☐ (4)  Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.    Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:    Appellate Division First Department

(b) Docket or case number (if you know):    2021-04478, 2013-02260

(c) Result:    Affirmed

(d) Date of result (if you know):    6/18/2024

(e) Citation to the case (if you know):    228 A.D.3d 521

(f) Grounds raised:
Trial counsel provided ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984); the trial court failed to give defense counsel notice of contents of jury notes

(g) Did you seek further review by a higher state court?    ☑ Yes    ☐ No

If yes, answer the following:

(1) Name of court:    New York Court of Appeals

(2) Docket or case number (if you know):

(3) Result:
Leave denied

(4) Date of result (if you know):    10/29/2024

AO 241
(Rev. 10/07)

(5) Citation to the case (if you know):        42 N.Y.3d 1021

(6) Grounds raised:
Trial counsel provided ineffective assistance under Strickland v. Washington, 466 U.S. 668
(1984); the trial court failed to give defense counsel notice of contents of jury notes

(h) Did you file a petition for certiorari in the United States Supreme Court?        ☐ Yes    ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?        ☐ Yes    ☑ No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)        (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐    Yes    ☐    No

(7) Result:

(8) Date of result (if you know):

AO 241
(Rev. 10/07)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ❒   Yes    ❒   No

    (7) Result:

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❒   Yes      ❒   No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1)  First petition:       ❒   Yes      ❒   No

(2)  Second petition:    ❒   Yes      ❒   No

(3)  Third petition:      ❒   Yes      ❒   No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.     For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**
Trial counsel provided ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984);

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel unreasonably failed to investigate exculpatory information in discovery, interview witnesses, contest the prosecution's evidence at trial, or request concededly necessary jury instructions. These failures individually and cumulatively constituted deficient performance and caused prejudice to Petitioner. Please see the attached memorandum of law.

(b) If you did not exhaust your state remedies on Ground One, explain why:

✎AO 241
(Rev. 10/07)

(c)      **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:


(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:       CPL 440.10

Name and location of the court where the motion or petition was filed:
New York County Supreme Court, New York, New York

Docket or case number (if you know):      3349/2012

Date of the court's decision:      9/15/2021

Result (attach a copy of the court's opinion or order, if available):
Motion to vacate denied


(3) Did you receive a hearing on your motion or petition?    ☑ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
Appellate Division First Department

Docket or case number (if you know):      2021-04478, 2013-02260

Date of the court's decision:      6/18/2024

Result (attach a copy of the court's opinion or order, if available):
Affirmed


(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:


**GROUND TWO:**


(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):


(b) If you did not exhaust your state remedies on Ground Two, explain why:


(c)     **Direct Appeal of Ground Two:**

        (1) If you appealed from the judgment of conviction, did you raise this issue?        ☐  Yes      ☐  No

        (2) If you did not raise this issue in your direct appeal, explain why:


(d)     **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

            ☐  Yes    ☐  No

        (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition:

        Name and location of the court where the motion or petition was filed:


        Docket or case number (if you know):

        Date of the court's decision:

AO 241
(Rev. 10/07)

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :
       have used to exhaust your state remedies on Ground Two

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)    **Direct Appeal of Ground Three:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?     ❐   Yes     ❐   No

   (2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

       ❐    Yes     ❐   No

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition:

   Name and location of the court where the motion or petition was filed:

   Docket or case number (if you know):

   Date of the court's decision:

   Result (attach a copy of the court's opinion or order, if available):

   (3) Did you receive a hearing on your motion or petition?     ❐   Yes     ❐   No

   (4) Did you appeal from the denial of your motion or petition?     ❐   Yes     ❐   No

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ❐   Yes     ❐   No

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed:

   Docket or case number (if you know):

   Date of the court's decision:

   Result (attach a copy of the court's opinion or order, if available):

AO 241
(Rev. 10/07)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐  Yes     ☐  No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐  Yes     ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241
(Rev. 10/07)

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):



(3) Did you receive a hearing on your motion or petition?                     ☐ Yes     ☐ No

(4) Did you appeal from the denial of your motion or petition?                 ☐ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):




(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:




(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

13.    Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court

        having jurisdiction?    ☑ Yes    ☐ No

        If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

        presenting them:

    (b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so,

        ground or grounds have not been presented, and state your reasons for not presenting them:

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

    that you challenge in this petition?    ☐ Yes    ☑ No

    If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

    raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

    of any court opinion or order, if available.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

    the judgment you are challenging?    ☐ Yes    ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

    raised.

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the

      judgment you are challenging:

      (a) At preliminary hearing:


      (b) At arraignment and plea:


      (c) At trial:
          Norman Williams Jr. (Williams Law Office, PLLC, 275 Madison Avenue, 14th Floor, New York, NY
          10016)

      (d) At sentencing:
          Norman Williams Jr. (Williams Law Office, PLLC, 275 Madison Avenue, 14th Floor, New York, NY
          10016)

      (e) On appeal:
          Jenay Nurse Guilford, Center for Appellate Litigation (120 Wall Street, 28th Floor, New York, NY
          10005)

      (f) In any post-conviction proceeding:
          Jenay Nurse Guilford, Center for Appellate Litigation (120 Wall Street, 28th Floor, New York, NY
          10005)

      (g) On appeal from any ruling against you in a post-conviction proceeding:



17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are

      challenging?          ☐  Yes      ☑  No

      (a) If so, give name and location of court that imposed the other sentence you will serve in the future:




      (b) Give the date the other sentence was imposed:

      (c) Give the length of the other sentence:

      (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

      future?              ☐  Yes      ☐  No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

      why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

      The petition is timely as it was filed less than a year after Petitioner's time for seeking a petition for writ
      of certiorari with the United States Supreme Court expired (which was January 27, 2025), 28 U.S.C. §
      2244(d)(1)(A).

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.    § 2244(d) provides in

part that:

    (1)      A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

        (A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

✎AO 241
(Rev. 10/07)

(2)     The time during which a properly filed application for State post-conviction or other collateral review
        with respect to the pertinent judgment or claim is pending shall not be counted toward any period of
        limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

The petition for a writ of habeas corpus should be granted and this Court should order petitioner's relief from
state custody.

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on     1 – 13 – 26          (month, date, year).

Executed (signed) on     1 – 13 – 26          (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32
-------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

          -against-                         **DECISION and ORDER**
                                               Ind. No. 3349/12

WILFRED MATTHEWS,

                            **Defendant**.
-------------------------------------------------------------------X
**GREGORY CARRO, J.,**

      Defendant Wilfred Matthews was found guilty after a jury trial of Murder in the First and Second Degrees, based on the murder of Peter Lisi, a 95-year-old man who lived at the Williams Residence, a senior living facility in Manhattan where the defendant worked on the maintenance staff. Defendant was sentenced on June 3, 2013 to life imprisonment without parole on the first-degree murder charge and concurrent sentences of 25 years to life on the two counts of second-degree murder. In June of 2018, defendant, through appellate counsel, filed a motion pursuant to CPL 440.10 to vacate defendant's conviction, alleging ineffective assistance of counsel at trial. The People opposed the motion. On February 1, 2019, the motion was granted to the extent of ordering an evidentiary hearing as to defendant's claims. A hearing was held on several dates from November 1, 2019 through January 22, 2020, during which defendant's trial lawyer, Norman Williams, testified. The parties then filed post-hearing submissions. This court presided over the trial and the evidentiary hearing, and has reviewed the parties' submissions. For the reasons that follow, the motion is denied.

<u>Defendant's Claims</u>

      Defendant makes several claims regarding trial counsel's performance, including that he

failed to use favorable discovery to cross-examine prosecution witnesses, failed to impeach witnesses with prior inconsistencies, failed to explore a third-party culpability defense, failed to elicit evidence of another explanation for the blood found on the defendant's jacket matching the victim's, failed to ask for a limiting instruction regarding the evidence of defendant's drug use, and failed to request a circumstantial evidence charge. Defendant argues that the various errors establish ineffective assistance of counsel and served to deprive him of a fair trial.

The People argue that defense counsel made reasonable strategic decisions in the face of overwhelming evidence, and that the defense has failed to meet its burden.

The Trial Evidence

On December 23, 2011, Peter Lisi, 95 years old, was found dead in his room at the Williams Residence, a senior independent living facility on the Upper West Side of Manhattan. He had been beaten and strangled. On December 31, 2011, Detective Mark Worthington discovered the defendant, a maintenance worker at the senior residence, using Lisi's senior Metrocard at the 96th Street station; the card had been used since December 26. When asked where he had gotten the card, defendant said that he had found it a few days earlier on 95th Street and Broadway.[1] On January 4, 2012, the police recovered defendant's jacket from his locker at the residence. The jacket had four bloodstains on the sleeves, which were determined to be Lisi's blood.

The prosecution introduced a "compiled video" of video clips gathered from various surveillance cameras inside and outside of the residence. The last video clip showing Lisi alive

---

[1]Under further questioning, defendant gave numerous inconsistent statements about his use of the Metrocard.

-2-

**A2056**

was on Wednesday evening, December 21, showing him get into the elevator at 9:53 p.m.[2] Video clips showed the defendant entering the residence at 7:43 p.m. on December 21, and throughout the early morning hours of December 22. At 12:10 a.m., he is seen putting on the jacket later recovered from his locker. Between 2:06 a.m. and 3:49 a.m., defendant is not seen on any of the cameras. At 3:49 a.m., he exited the building, returning at 4:04 a.m. and going into the locker room. At 4:58 a.m., the defendant is seen again entering the locker room, and 15 minutes later, exits the locker room wearing only underwear, and is seen walking toward the slop sink. He re-emerges from that area wearing a sweatshirt and pants. He left the residence at 5:33 a.m. Defendant did not show up for his shift that began on midnight on December 23. Defendant was in possession of a master key that gave him access to all the rooms at the residence.

The residence had a "missed meal" policy that required staff to check on residents who did not show up for meals or alert the staff they would not be coming to that meal. If the resident was located, he or she was crossed off the missed meals list. Lisi informed the staff that he would not be coming to lunch or dinner on Wednesday, December 21. He did not appear for any other meals after that date. However, Lisi's name was crossed off the missed meals list for lunch on December 22.

Lisi was discovered on the afternoon of December 23rd, lying naked on his back on the floor, with a chair and walker next to his body. One of the first responders, a firefighter, moved the chair and the walker as part of his unsuccessful effort to resuscitate Lisi. A medical legal investigator, James Meyer, employed by the Office of the Chief Medical Examiner (OCME),

---

[2]The CPL 440 hearing testimony revealed that there was a thirty-minute gap in the videotape of the residence entrance, from approximately noon to 12:30 p.m. on Thursday, December 22, 2011.

testified that the likely time of death was between 2:00 a.m. and 5:30 a.m. on December 22.  Dr. Candace Schoppe, a board-certified forensic pathologist also employed by OCME, testified that Lisi died from multiple impact injuries, as well as strangulation, possibly by a phone cord, a string or a scarf. Schoppe agreed with Meyer's testimony that Lisi died between 2:00 a.m. and 5:30 a.m on December 22.[3]

A receptionist at the residence testified that he sent the defendant to Lisi's room on December 11, 2011, after receiving a call from Lisi, who had fallen and needed help getting up. This same receptionist testified that defendant borrowed money from him once or twice, in small amounts. A front desk clerk testified that he and the defendant sometimes borrowed money from each other, but that defendant borrowed more often in December, 2011.  Another employee, an engineer, testified that defendant asked to borrow $20 in a "frantic way" on December 21, and that the defendant seemed like he "wanted the money bad." The engineer testified that he occasionally smoked marijuana with the defendant, but he stopped because he thought the defendant was smoking other drugs, like crack cocaine. Another witness who worked at the residence, a friend of the defendant's, Charles Stewart, testified that he noticed a change in defendant's behavior and mood in the months before Lisi's death. Defendant was having financial problems, as well as problems with his wife. He asked Stewart for money on a few occasions, and for occasional "swipes" for the subway. Stewart once saw defendant go into

---

[3]440 hearing testimony showed that an earlier pathologist's report completed by Schoppe contained a conflicting time of death estimate, and that Schoppe revised the estimate after speaking with the police.

-4-

**A2058**

Stewart's locker and search his jacket pockets, although he did not take anything.[4]

Daniel Kalter, a pawn shop owner, testified that defendant pawned a platinum and diamond ring for $200 on December 6, 2011. Pawan Veram testified that defendant sold four gold rings to his jewelry store on November 11, 2011, and received $123.

CPL 440.10 Hearing Testimony

Norman Williams, an attorney on the 18-B homicide panel, was assigned to represent the defendant on November 9, 2012. Williams began his career at the Legal Aid Society, where he worked for five years, and had his own criminal defense practice for 17 years.

The defendant's trial began on April 29, 2013, allowing Williams almost six months to prepare. His preparation included reviewing the discovery provided, sending an investigator to interview witnesses, and going to the Williams Residence himself to investigate the scene. Williams also received about 300 hours of surveillance video; he relied on the prosecutor's representations in viewing only the relevant portions.

Williams testified that his trial strategy was to show that defendant was not the person who committed the crime, and that "what actually happened" was not what the prosecution alleged. Williams retained an investigator, Rodney Jones, who also testified at the hearing. Jones met with the defendant and his family. He went to the Williams Residence to attempt to interview witnesses, but was not permitted to interview any of the employees. He accompanied Williams to the residence on a separate occasion, and took photographs.[5]

---

[4]On cross-examination, Stewart testified that he knew defendant was using drugs, because he once told Stewart that he was angry because he thought someone had stolen his cocaine.

[5]Jones apparently interviewed one witness, a relative of the defendant.

-5-

**A2059**

Counsel had received a document during discovery which contained entries written by Dr. Schoppe, the pathologist who conducted the autopsy. In that document, written on January 3, 2012, Schoppe stated that the post-mortem changes in Lisi's body were consistent with a 12-18 hour post-mortem interval, indicating that Lisi was killed between 9 p.m. on December 22 and 3 a.m. on December 23, or after the defendant was seen leaving the residence. After detectives informed Schoppe that the defendant was seen entering the residence at 1:00 a.m. and leaving at about 6:00 a.m. on December 22, that Lisi missed lunch on December 22, and after discussing the case with senior medical examiners and the chief medical examiner, Schoppe concluded it was possible that the post-mortem interval could be "around 36 hours, consistent with the time frame that the suspect was seen entering and leaving the building."

Williams did not question Schoppe about this earlier estimate. When asked why, he testified that he could not think of a reason, but that his "best guess" was that he probably did not think it helped. He also did not ask if she had changed her opinion after talking with detectives, "guessing" because he did not think that non-scientist police officers would have "swayed" the scientist's analysis. While Williams testified that at the time he was not concerned with the prosecutor calling additional witnesses from the medical examiner's office if he were to question Schoppe about her revised estimate, he did agree with the prosecutor during cross-examination that he would have had to "attack the whole office and their procedures," and that he did not think that was an effective strategy.

Williams testified that he did not have a basis to cast doubt on the evidence that the victim's DNA was recovered from the bloodstains found on defendant's jacket sleeve. Williams was asked whether he investigated information given to him in discovery that Lisi had facial

surgery in early December, and that when defendant went to Lisi's room on December 11 to assist him when he fell, Lisi might have been bleeding, and this offered an explanation for the bloodstains. Williams stated that he considered the fact that defendant had been in the room with Lisi sufficient to come up with an innocent explanation for the bloodstains, and that doing anything more could be risky. Williams also noted that it would be difficult to establish that Lisi was bleeding on that date after the earlier surgery. Williams did argue in summation that Lisi's blood may have "found its way" onto defendant's jacket when he was in the room with him on December 11.

Williams was asked about the absence of defendant's DNA on Lisi's body or his wallet, as well as the absence of Lisi's DNA on a phone charger recovered from defendant. Williams testified that he considered this "good information" that might help the defense, but he did not elicit the evidence about the absence of defendant's DNA on the body because he did not want to risk being "burned" with an extra question.[6] Counsel also testified that he did not elicit evidence about the wallet because he did not want to plant the idea in the jury's mind that defendant may have touched the wallet, when the prosecution had not suggested that defendant stole the Metrocard from the wallet. Similarly, Williams did not want to suggest to the jury that the phone cord may have been the murder weapon and then have the jurors speculate that the defendant had wiped off any evidence of DNA.

Counsel did not elicit that Lisi's name was crossed off the missed meals list for lunch on December 22, after the time he was allegedly killed. Defense counsel was told before trial that

---

[6]Counsel suggested that it would be better to just mention it on summation, although he did not do so.

employee Orlando Vasquez initially told detectives that he had checked Lisi's room at 2:30 p.m. on December 22 and that Lisi was not there. Counsel was also informed that Vasquez subsequently recanted that statement, stating that he must have gone into a different room. Counsel was also told that another employee, Leona Samuels, first told police that she had last seen Lisi alive on Thursday, December 22 when he came to pick up his newspaper at the front desk. After viewing video, she stated that she had been mistaken, and that it must have been Wednesday, December 21, that she had last seen him. Counsel did not make any efforts to bring these inconsistencies before the jury. When asked if he relied on the prosecutor to conclude that the revised versions were the correct versions, Williams responded that he put his "own thought into it" and concluded that the changed versions made sense. Additionally, Williams felt that the employees at the residence were a "landmine," who had concluded that defendant was the killer, and he did not want to risk calling them as witnesses.

Counsel had surveillance videotape of about 282 hours. In reviewing the tapes, Williams was guided by the prosecutor, who told him which were the relevant portions. While he was aware that there was a thirty-minute gap in the videotapes, covering the period from 12:00 to 12:30 p.m. on Thursday, December 22, possibly corresponding to the time Samuels initially said she last saw Lisi alive, counsel did not bring this information before the jury.

Williams was also questioned about whether he had considered raising a third-party culpability defense regarding employee Orlando Vasquez, a housekeeper at the residence. Counsel testified that any evidence potentially pointing to Vasquez as the perpetrator (including that Vasquez was considered a suspect by the police at one point; that he was seen near the front desk, with access to latex gloves and residents' keys on December 22; that Vasquez twice told

police he went to Lisi's room on December 22 and didn't see him, but changed his story after a

third interview; and that Vasquez had access to a master key), was insufficient in his opinion to

raise the issue.

Before trial, the prosecutor stated his intention to establish that the defendant was a drug

user who was "lacing his marijuana with crack." Williams did not object to the introduction of

this evidence or ask for a limiting instruction concerning the jury's use of the evidence. Counsel

also elicited evidence of the defendant's drug use through the prosecution's witness Charles

Stewart. Counsel testified that he "knew" the court would allow the evidence so he chose to

"embrace" it in the hope the jury would find that the defendant was a drug user or victim but not

a murderer. Williams conceded that it was an "oversight" not to ask for a limiting instruction

concerning the evidence. Counsel also conceded that it was an oversight and a "mistake" not to

request a circumstantial evidence charge.

<u>Analysis</u>

To establish a claim of ineffective assistance of counsel, a defendant must prove that

counsel's performance, viewed in its totality, did not amount to meaningful representation. *See*

*People v. Benevento*, 91 NY2d 708, 711-12 (1998); *People v. Barnes*, 106 AD3d 600, 605 (1st

Dep't 2013).  The defendant must demonstrate the absence of strategic or other legitimate

explanations for defense counsel's actions. *See Benevento*, 91 NY2d at 713; *Barnes,* 106 AD3d

at 605. A defendant must show that counsel's errors ultimately affected the fairness of the

process as a whole, *see Benevento*, 91 NY2d at 713-14; *Barnes,* 106 AD3d at 605, or, under the

federal standard, that there was a reasonable probability that, but for counsel's conduct, the result

of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694

-9-

**A2063**

(1984).

Under the federal standard, judicial scrutiny of counsel's performance must be "highly deferential;" courts should not "second-guess" counsel's particular actions and decisions. *Strickland*, 466 U.S. at 689. Similarly, under New York law, "counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective;" our Constitution guarantees a "fair trial, not necessarily a perfect one." *Benevento*, 91 NY2d at 712-13. The question is whether counsel's conduct constituted "egregious and prejudicial" error such that defendant did not receive a fair trial.

Applying these standards, this court concludes that defendant did not receive the ineffective assistance of counsel. Defendant has failed to establish that the acts or omissions of counsel fell below an objective standard of reasonableness, that they individually or collectively had a reasonable probability of affecting the outcome, or deprived defendant of a fair trial.

Initially, defendant's trial lawyer was a very experienced attorney, who had worked in criminal defense for 22 years. Counsel properly reviewed the discovery, engaged an investigator, and investigated the scene himself. Moreover, defendant was unable to demonstrate the absence of strategic or other legitimate explanations for the majority of defense counsel's actions.

For instance, counsel testified that he did not think it would be productive to question the pathologist about her original time of death estimate given her agreement at trial with the medical investigator's estimate of the time of death, and that he did not want to engage in an attack on the entire office of the medical examiner. Thus, he had a strategic or legitimate explanation for that decision. Similarly, counsel had a legitimate explanation for not eliciting Lisi's facial surgery some weeks before the murder as an explanation for the victim's blood on defendant's sleeve.

-10-

**A2064**

As counsel noted, it would be difficult to establish that Lisi was bleeding from surgery that occurred earlier on the particular date that defendant went to Lisi's room. He instead made a strategic decision that it would be best to argue on summation, as he did, that defendant may have gotten blood on his jacket when he went to assist Lisi on December 11.

Again, counsel made strategic decisions not to elicit the absence of defendant's DNA found on Lisi's body or wallet, and the absence of Lisi's DNA on the phone cord recovered from the defendant. Counsel noted that he did not want to plant suggestions in the jurors' minds that defendant may have touched Lisi's wallet, or that the phone cord may have been the murder weapon. Counsel had a legitimate explanation for not raising a third-party culpability defense as to Orlando Vasquez – simply that the evidence was too weak to make such a claim. He also made strategic decisions not to call Vasquez and Samuels as witnesses when both could have given testimony damaging to the defense. Finally, counsel's decision to "embrace" the testimony of defendant's drug use was certainly a strategic decision.

Counsel admirably conceded that his failure to ask for a limiting instruction regarding the defendant's drug use, or to ask for a circumstantial evidence charge, were oversights. However, as noted above, defendant is not entitled to an error-free defense. *See Benevento*, 91 NY2d at 712-13. This court is not persuaded that counsel's errors constituted such "egregious and prejudicial" error so as to deprive the defendant of a fair trial. And, under the federal standard, the court is not convinced that there is a reasonable probability that, without these errors, that the outcome would have been different. *See Strickland,* 466 U.S. at 694.

This court presided over the trial, and while the evidence was circumstantial, it was overwhelming, including, the defendant's possession of the victim's Metrocard, his changing

-11-

**A2065**

explanations for that possession, video surveillance showing the defendant at the residence when he was not scheduled to work during the evening of December 21 into the morning of December 22, as well as his suspicious behavior during the morning of the 22nd in which he changed his clothes and appeared to wash in the basement sink, the victim's blood on defendant's jacket, and his motive based on his drug addiction, financial difficulties, and apparently, increasing desperation.

Under these circumstances, this court will not second-guess counsel's strategic decisions. Counsel's performance, viewed in its totality, amounted to meaningful representation, and defendant's motion must be denied. Defendant was not deprived of the effective assistance of counsel, and he was not deprived of a fair trial.

The motion is denied.

Dated: September 15, 2021

_____
Justice, Supreme Court

HON. GREGORY CARRO

-12-

A2066

FILED: APPELLATE DIVISION - 1ST DEPT 06/18/2024 10:23 AM       2013-02260
NYSCEF DOC. NO. 39                                    RECEIVED NYSCEF: 06/18/2024

# Supreme Court of the State of New York

## Appellate Division, First Judicial Department

Manzanet-Daniels, J.P., Kennedy, Scarpulla, Shulman, Higgitt, JJ.

| | | |
|---|---|---|
| 2525-<br>2525A | THE PEOPLE OF THE STATE OF NEW YORK,<br>Respondent,<br><br>-against-<br><br>WILFRED MATTHEWS,<br>Defendant-Appellant. | Ind. No. 003349/12<br>Case No. 2021-04478<br>2013-02260 |

___

Jenay Nurse Guilford, Center for Appellate Litigation, New York (Matthew Bova of counsel), and Latham and Watkins LLP, Washington, D.C. (Cherish Drain of the bar of the District of Columbia, admitted pro hac vice, of counsel), for appellant.

Alvin L. Bragg, Jr., District Attorney, New York (Peter Rienzi of counsel), for respondent.

___

Judgment, Supreme Court, New York County (Gregory Carro, J.), rendered June 3, 2013, convicting defendant, after a jury trial, of murder in the first degree and murder in the second degree (two counts), and sentencing him to an aggregate term of life without parole, and order, same court and Justice, entered on or about September 15, 2021, which denied defendant's CPL 440.10 motion to vacate the judgment, unanimously affirmed.

Defendant's claim that the court violated CPL 310.30 by failing to provide defense counsel with meaningful notice of two jury notes (*see generally People v O'Rama*, 78 NY2d 270 [1991]) is unpreserved (*see People v Williams*, 21 NY3d 932, 935 [2013]), and we decline to review it in the interest of justice. As an alternative holding, we find that the court provided meaningful notice of the contents of both jury notes. The court did not summarize or paraphrase the first challenged note, but instead read it

"almost verbatim" (*People v Ramirez*, 60 AD3d 560, 561 [1st Dept 2009], *affd* 15 NY3d 824 [2010]). To the extent there were inconsistencies in punctuation between the note and the transcript, they were minor and did not alter the meaning of the note (*see People v Carter*, 201 AD3d 551, 551 [1st Dept 2022], *lv denied* 38 NY3d 949 [2022]). Although the court did not read the second disputed note into the record, the prosecutor thereafter stated, "For the record, both sides were given an opportunity to read the second note, as we were the first, prior to the court responding to the jury," without objection or comment from defense counsel or the court. The prosecutor's uncontradicted statement constituted "specific, record proof" that the court provided counsel with the contents of the jury note (*People v Parker*, 32 NY3d 49, 60 [2018]).

Defendant received effective assistance of counsel under the state and federal standards (*see Strickland v Washington*, 466 US 668 [1984]; *People v Benevento*, 91 NY2d 708, 713-714 [1998]). Counsel vigorously represented defendant in the face of overwhelming evidence of defendant's guilt. The evidence at the CPL 440.10 hearing established that counsel investigated the crime, thoroughly reviewed discovery materials, and made strategic decisions in constructing a defense. Defendant's claims, amounting to no more than a "simple disagreement with [counsel's] strategies, tactics or the scope of possible cross-examination," do not satisfy his burden of establishing ineffective assistance (*People v Flores*, 84 NY2d 184, 187 [1994]; *see also People v Fu Chen*, 293 AD2d 362, 363 [1st Dept 2002], *lv denied* 98 NY2d 696 [2002]). Further, counsel cannot be faulted for declining to pursue a defense that had "little or no chance of success" (*see People v Caban*, 5 NY3d 143, 152 [2005] [internal quotation marks omitted]). While counsel conceded that his failures to request a limiting instruction regarding defendant's drug use or a circumstantial evidence charge were oversights, the

2

motion court properly concluded that these errors were not so "egregious and prejudicial" as to deprive defendant of a fair trial. Finally, there was no reasonable probability that, but for these errors, the outcome would have been different.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: June 18, 2024

Susanna Molina Rojas
Clerk of the Court